LTL ATTORNEYS LLP
Enoch H. Liang (SBN 212324)
 enoch.liang@ltlattorneys.com
Kevin M. Bringuel (SBN 196279)
 kevin.bringuel@ltlattorneys.com
Timothy S. Fox (SBN 280918)
 timothy.fox@ltlattorneys.com
300 S. Grand Ave., 14th Floor
Los Angeles, CA 90071
Tel: (213) 612-8900
Fax: (213) 612-3773

Attorneys for Defendants
Joseph Prencipe and McLear & Co.

FILED
Superior Court of California
County of Los Angeles

APR 21 2017

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
N. DiGiambattista

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| ESOS RINGS, INC., a Delaware corporation,<br><br>  Plaintiff,<br><br>v.<br><br>JOSEPH PRENCIPE, an individual, MCLEAR & CO., a Delaware Corporation,<br><br>  Defendants. | CASE NO.: BC652020<br><br>[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Hearing Held:<br>Date: March 30, 2017<br>Time: 1:30 p.m.<br>Dept.: 82<br>Judge: Hon. Mary H. Strobel<br><br>Action Filed: February 27, 2017<br>Trial Date: Not set |



# [PROPOSED] ORDER

Plaintiff's Motion for a Preliminary Injunction came on for hearing on March 30, 2017 before the Honorable Mary H. Strobel in Department 82 of the above-entitled Court. Having considered Plaintiff's Motion, Defendants' Opposition to the same, Plaintiff's Reply, and following argument from the parties present, it is hereby ORDERED that:

- Plaintiff's Motion for a Preliminary Injunction is denied for the reasons stated in the Court's tentative ruling, attached as **Attachment A** to this Order.

**IT IS SO ORDERED**

Dated: April 21, 2017

*/s/ Mary Strobel*

The Honorable Mary H. Strobel

---

1

[PROPOSED] ORDER DENYING PRELIMINARY INJUNCTION

EXHIBIT A

# ATTACHMENT A

Esos Rings, Inc.,                              Judge Mary Strobel
                                               Hearing: March 30, 2017
v.

Joseph Prencipe, et al.

BC652020                                       Tentative Decision on Application for
                                               Preliminary Injunction: DENIED


Plaintiff Esos Rings, Inc. ("Plaintiff") moves for a preliminary injunction enjoining Defendants Joseph Prencipe and McLear & Co. ("MCL") (collectively "Defendants") and their officers, agents, servants, employees, attorneys, predecessors, successors in interest, and anyone acting in concert with such persons, from taking any actions to claim the rights of, exploiting, diminishing the value of, or further assigning, any rights in and to U.S. Patent No. 9,313,609.

**Judicial Notice**

Defendants' RJN, Exhibits A-B – Granted.  (Evid. Code § 452(c), (h).)

Plaintiff's Reply RJN, Exhibits A-G – Granted.  (Evid. Code § 452(d), (h).)

**Background and Procedural History**

On February 27, 2017, Plaintiff filed a complaint against Defendants Prencipe and MCL for breach of contract, declaratory relief, quiet title, fraudulent transfer, fraud, breach of fiduciary duty, and intentional interference with prospective economic relations. The complaint alleges that on April 12, 2016, the U.S. Patent Office issued Patent No. 9,313,609 (the "Patent" or the "'609 Patent") to Prencipe. The patent covers, without limitation, a near-field communication ("NFC") ring that, when worn on the consumer's finger, can replace his or her credit card and house key. (Compl. ¶ 9.) "On October 10, 2016, Prencipe executed a document titled 'Intellectual Property Assignment Agreement' that purported to assign the '609- Patent from Prencipe to his incorporated entity, MCL." (Id. ¶ 10.)

Plaintiff alleges, on information and belief, that Prencipe voided the assignment to MCL. (Id. ¶ 13.) "Prencipe then agreed to form a new company and transfer ownership of the '609 Patent to the new company, which [Michelle] Silverstein and a

1

primary business contact would then own and run." (Id. ¶ 14.) By way of emails, "Prencipe provided Silverstein with executed final copies of the two assignments — one from Prencipe to PIL, Inc., and the second from PIL, Inc. to Esos, Inc." (Id. ¶ 20.) "Prencipe, however, failed to file for the incorporation of these two nascent corporations." (Id. ¶ 21.) "As a result, title to the '609 Patent devolved to the signatories for PIL, Inc. (Chris Trehan) and Esos, Inc. (Silverstein)." (Id. ¶ 22.) "On January 27, 2017, Silverstein assigned her interest in the '609 Patent to Plaintiff Esos Rings, Inc., an entity she incorporated upon learning of Prencipe's failure to properly incorporate PIL, Inc. and Esos, Inc." (Id. ¶ 23.) "In reliance on Plaintiff's rights under the '609 Patent, Plaintiff negotiated several prototyping agreements for NFC rings with large companies, including the software company, SAP, only to lose those clients as a result of Prencipe's continued false representations." (Id. ¶ 24.) Plaintiff alleges that Prencipe continues to exploit the rights to the Patent to Plaintiff's detriment. (Id. ¶¶ 26-41.)

On February 28, 2017, the court (Judge Joseph Kalin) denied without prejudice Plaintiff's ex parte application for a TRO, finding that no irreparable harm was shown at that time.

On March 1, 2017, the court (Judge Mary Strobel) granted Plaintiff's ex parte application for an order shortening time to hear a motion for preliminary injunction. The court set the matter for hearing on March 30, 2017 and set a briefing schedule. The court has received Plaintiff's moving papers, Defendants' opposition, and Plaintiff's reply. The court also granted Plaintiff's ex parte application to file portions of the declaration of Michelle Silverstein under seal.

**Summary of Applicable Law**

The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits. (*Major v. Miraverde Homeowners Ass'n.* (1992) 7 Cal. App. 4th 618, 623.) In deciding whether or not to grant a preliminary injunction, the court looks to two factors, including "(1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief." (*White v. Davis* (2003) 30 Cal.4th 528, 553-54.) The factors are interrelated, with a greater showing on one permitting a lesser showing on the other. (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420.) However, the party seeking an injunction must demonstrate at least a reasonable probability of success on the merits. (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 73-74.) The party seeking the injunction bears the burden of demonstrating both a likelihood of success on the merits and the occurrence of irreparable harm. (*Savage v. Trammell Crow Co.* (1990) 223 Cal.App.3d 1562, 1571.) Irreparable harm may exist if the plaintiff can show an inadequate remedy at law. (CCP § 526(a).)

2

## Analysis

### Likelihood of Prevailing

The application is based on a cause of action for breach of contract, and specifically breach of an alleged written assignment of the Patent to Plaintiff. To establish a claim for breach of contract, a plaintiff must prove: (1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach of the contract; and (4) damages incurred by plaintiff as a result of the breach. (*Durell v. Sharp Healthcare*, (2010) 183 Cal.App.4th 1350, 1367.) Under federal law, a patent may be transferred by written assignment. (35 U.S.C. § 261; *U.S. v. Solomon* (9th Cir. 1987) 825 F.2d 1292, 1296.)

On May 1, 2016, Prencipe incorporated Defendant MCL as its sole incorporator. (Silverstein Decl. ¶ 4, Ex. 3.) MCL's bylaws provide that Prencipe is the Executive Director, Secretary, and Treasurer and that he had the power and authority to execute agreements on behalf of MCL. (Ibid.)

On October 10, 2016, Prencipe executed a document titled "Intellectual Property Assignment Agreement" that purported to assign the Patent from Prencipe to his incorporated entity, MCL. (Silverstein Decl. ¶ 3, Exh. 2.) The written assignment reflects payment of $500 by MCL for the Patent. (Ibid.)

Plaintiff contends that Prencipe's actions in October and November 2016 resulted in a transfer of the Patent to Plaintiff. Plaintiff submits the following in support: (1) an email dated October 26, 2016, sent from j.n.prencipe@gmail.com to Silverstein, which included draft documents to incorporate an entity, PIL Inc., to which the Patent would be assigned; (2) an email dated November 23, 2016 from the same Gmail account to Silverstein attaching a signed written assignment from Prencipe individually to PIL, Inc.; and (3) a November 23, 2016 written assignment from PIL, Inc. to Esos, Inc. (Silverstein Decl. ¶¶ 6-8, Exh. 5-7, 13.) Neither PIL, Inc. nor Esos, Inc. had been incorporated at the time these written assignments were executed. (Id. ¶ 9.) The assignment to and from PIL, Inc. was executed by Chris Trehan as director of PIL, Inc., by Prencipe individually, and by Rex Scates. The assignment to Esos, Inc. was executed by Silverstein as COO of Esos, Inc. (Id. Exh. 6-7.) Silverstein declares that on January 27, 2017 she assigned her interests in the Patent to Plaintiff Esos Rings, Inc. (Id. ¶ 12, Exh. 9.)

The assignment from Prencipe to PIL, Inc. requires payment of $20,000 from PIL, Inc. to Prencipe. It appears no payment has been made. Plaintiff states that it is

3

ready, willing, and able to pay Prencipe what he is owed for the assignment of the Patent. (Silverstein Decl. ¶ 11.)

The parties' briefs raise a number of arguments both for and against Plaintiff's claim that Plaintiff has rights to the Patent by virtue of a written assignment.

### Assignment to Nascent Corporations

Plaintiff contends that its chain of title to the Patent traces from Prencipe to Chris Trehan, from Trehan to Silverstein, and from Silverstein to Plaintiff. Plaintiff contends that, under the nascent corporation doctrine, it does not matter that neither PIL, Inc. nor Esos, Inc. were incorporated at the time of the first purported assignments from Prencipe and from Trehan. (Mot. 7-9.) Defendants have declined to respond to this argument in their written opposition.

Plaintiff argues that the issue is governed by Delaware law. That argument seems incorrect. The assignments to PIL, Inc. and Esos, Inc. contain governing law provisions which state that "the Agreement ... shall be governed by and construed in accordance with the law of California." (Silverstein Decl. Exh. 6 and 7, ¶ 3.12.)

Although Plaintiff does not cite any California state cases on point, the federal district court case cited by Plaintiff found that a California court would likely follow Restatement (Third) of Agency, Section 6.04 (2006). Section 6.04 provides in part: "Unless the third party agrees otherwise, a person who makes a contract with a third party purportedly as an agent on behalf of a principal becomes a party to the contract if the purported agent knows or has reason to know that the purported principal does not exist or lacks capacity to be a party to a contract." (*Davis Wine Co. v. Vina Y Bodega Estampa, S.A.* (D. Oregon 2011) 823 F.Supp.2d 1159, 1176.) Defendants cite no contrary California authority.

Here, a reasonable inference can be made that Prencipe, Trehan, and Silverstein would have known that at the time of the written assignments that PIL, Inc. and Esos, Inc. did not yet exist. (See Silverstein Decl. ¶¶ 6-10, Exh. 5.) Plaintiff therefore has a reasonable probability of establishing that any valid assignments from Prencipe to PIL, and then from Tehran to Esos, Inc., were made to the individual agents signing for PIL and Esos, Inc.

### Validity of the MCL Assignment

At the time of the alleged assignments to PIL, Inc. and Esos, Inc., Prencipe had already executed a written assignment of the Patent to MCL. Therefore, the issue arises of whether Prencipe had any rights in the Patent on November 1, 2016 to assign.

4

Plaintiff tangentially addresses this issue in the moving brief, but its arguments focus on estoppel and not the validity of the MCL assignment. (Mot. 9-10.) Plaintiff contends that Prencipe, while acting both as attorney for Plaintiff and an authorized representative of MCL, told Plaintiff that the assignment to MCL was not valid and then prepared paperwork to transfer the Patent. (Ibid.; citing Silverstein Decl. Exh. 4, ¶ 3 and Exh. 5-6.) The cited evidence does not challenge the validity of the October 10, 2016 assignment from Prencipe to MCL, which was supported by consideration and is on record with the USPTO. (Id. Exh. 2 and 4.) Rather, the evidence relates to Plaintiff's estoppel argument, which the court addresses below.[1]

Estoppel

Plaintiff argues that Defendants are estopped from relying on the prior transfer to MCL to refute Plaintiff's breach of contract claim. (Mot. 9-10; Reply 9-10.)

"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (Evid. Code § 623.) Section 623 codifies the doctrine of equitable estoppel. (*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III* (1994) 30 Cal.App.4th 54, 59-60.) "Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." (Ibid.)

"Whether a party's conduct estops it from taking a particular legal position usually, though not always, involves a factual determination." (*Chin v. Namvar* (2008) 166 Cal.App.4th 994, 1006.)

Plaintiff cites the following evidence to support estoppel. In her USPTO affidavit, Silverstein represented that Prencipe informed her that MCL "was not a valid party to

---

[1] Plaintiff points out that the November 1, 2016 assignment includes a "further assurance" clause in which Prencipe, as an individual, promised to "use all reasonable endeavors to procure that any necessary third party shall, promptly execute and deliver such documents and perform such acts as may reasonably be required for the purpose of giving full effect to this agreement." (Mot. 10; Exh. 6 at ¶ 3.1) In its motion, Plaintiff has not argued that it would be appropriate for the court to issue a mandatory preliminary injunction requiring Prencipe to execute such further documents on behalf of MCL as necessary to make the assignment effective.

5

receive the assignment, and that corrected assignments would instead be executed." (Silverstein Decl. Exh. 4, ¶ 3.) Silverstein provides no context in either the affidavit or her declaration for the claim that Prencipe told her, at some unstated date, that MCL was not a valid party to the October 10, 2016 assignment. Thus, this evidence does not provide much support for estoppel.

In an email from Prencipe to Silverstein dated December 1, 2016, which involved non-disclosure agreements, Prencipe stated: "it's definitely not a good idea to sign anything in the name of McLear & Co... that amounts to fraud." (Silverstein Decl. Exh. 8.) In opposition, Prencipe declares that he meant by these words to explain to Silverstein that if she signs anything on behalf of MCL that would amount to fraud because she no longer works for MCL (she was terminated on November 1, 2016). (Prencipe Decl. ¶¶ 24, 35.) The December 1, 2016 statement from Prencipe is not persuasive evidence that Prencipe had represented to Plaintiff or Silverstein that the transfer to MCL was invalid. In context, Prencipe seemed to be asserting that Silverstein lacked authority to sign anything in the name of MCL. He did not mention the Patent or MCL's rights thereto. Moreover, this December 1, 2016 email postdates the purported transfers to PIL, Inc. and Esos, Inc., which undermines Plaintiff's assertion of reliance on that statement.

Plaintiff's strongest argument for estoppel is that Prencipe prepared and shared with Silverstein the necessary paperwork to transfer the Patent to PIL, Inc. and eventually to Plaintiff. (Silverstein Exh. 5-6, 12-13.) The November 1, 2016 assignment to PIL, Inc., signed by Prencipe, represents that "assignor has not validly assigned the Patent to any other entity."[2] (Id. Exh. 6.)

Although not strenuously argued by Defendants, the court questions whether the evidence is sufficient to support estoppel against MCL's patent rights based on statements made by Prencipe. Plaintiff alleges that Prencipe and MCL are "one and the same" (see Reply 9, fn. 7), but Plaintiff has not analyzed or discussed evidence supporting the elements of alter ego. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.) Plaintiff does not point to any clear representation by

---

[2] In the moving papers, Plaintiff asserts that in October and November 2016 Prencipe, a licensed California attorney, was the attorney for Silverstein and her business partner Rex Scates. (Silverstein Decl. ¶ 5; Scates Decl. ¶ 2.) Prencipe denies acting as attorney for Silverstein, PIL, Inc., or Esos, Inc. (Prencipe Decl. ¶¶ 37-38.) In reply, Plaintiff submits documentary evidence suggesting that Prencipe acted as legal counsel for Silverstein and Scates in negotiation of an NDA with third party SAP, SE in December 2016. (Suppl. Silverstein Decl. ¶ 7, Exh. 19.) Although Plaintiff submits some evidence of an attorney-client relationship between Prencipe, Silverstein, and Scates, that evidence is disputed and is not dispositive to estoppel.

6

Prencipe that he was acting on behalf of MCL when preparing paperwork to transfer the Patent. The November 1, 2016 assignment was signed by Prencipe individually.

Plaintiff also has not clearly explained why it was reasonable to rely on those statements to conclude that the transfer to MCL was invalid. Plaintiff has not explained, nor cited any specific representations from Prencipe regarding, the legal grounds on which the transfer to MCL would have been invalid. The assignment to MCL was supported by consideration and has been on record with the USPTO since October 20, 2016. (Silverstein Decl. Exh. 2.) Perhaps Plaintiff could elucidate this issue in later proceedings, but on this record it is unclear why the transfer to MCL would have been void or invalid.

Defendants also point out that Plaintiff has not paid consideration to Prencipe for the transfer of the Patent. (Oppo. 12-13.) Silverstein represents that Plaintiff has asked for banking information from Prencipe to remit payment, but she does not explain when such request was made. (Silverstein Decl. ¶ 11.) Prencipe also submits emails from Silverstein, dated December 29, 2016, which state that "we do not have an exclusive on the patent" and "my agreement to pay was never formalized as you never assigned us exclusive rights to the patent." (Prencipe Decl. ¶¶ 30-31, Exh. 10-11.) Despite Silverstein's reply statements to the contrary (see Suppl. Silverstein Decl. ¶ 8), her December 29 emails along with the evidence that no consideration has been paid to Prencipe raise legitimate questions about whether she and Plaintiff reasonably (or truly) believed an exclusive transfer from Defendants to PIL, Inc. occurred.

Assuming *arguendo* that Prencipe's conduct and statements are attributed to MCL and that it was reasonable for Plaintiff to rely on such statements, Plaintiff has submitted some evidence that it has developed business relationships with third parties seeking to commercialize rings based on the Patent. Plaintiff submits evidence that these business relationships have or will be disrupted by Defendants continued use of the Patent. (Silverstein Decl. ¶¶ 16-53.) It is not clear from Silverstein's declaration how much time and money Plaintiff has invested in these relationships as a result of Prencipe's representations that the transfer to MCL was invalid or void. Thus, on this record, Plaintiff's reliance damages are somewhat speculative.

Plaintiff has shown some probability of establishing estoppel, but there are a number of weaknesses in that claim, as discussed above.

### Forgery

Defendants assert that the November 1, 2016 assignment was not signed or authorized by Prencipe. (Oppo. 5-6, 10-11.) Prencipe states the following in his declaration: "I never signed, or otherwise authorized any documents related to

7

assigning the '609 Patent rights to Ms. Silverstein, Esos, Inc., Esos Rings, Inc., or any other business entity associated with Ms. Silverstein, whether through PIL, Inc. or any other entity." (Prencipe Decl. ¶ 39.) As CEO of MCL, he declares that there are no pending or contemplated transactions concerning an assignment of the Patent from MCL to Silverstein, Plaintiff, or any other business entity associated with Silverstein. (Id. ¶ 40.)

Against this evidence, Plaintiff submits a third-party forensic report which states that the October 26, 2016 and November 1, 2016 emails and attachments from Prencipe's Gmail account "are authentic." (Silverstein Decl. ¶ 33, Exh. 12.)

Prencipe appears to deny signing the November 1, 2016 agreement assigning the Patent to PIL, Inc. The forensic report submitted by Plaintiff does not assess the authenticity of Prencipe's signature.[3] On the other hand, Defendants have not persuasively challenged the conclusion in the forensic report that the emails and attachments were sent from Prencipe's Gmail account, and they have not provided another explanation of how the emails were sent. Thus, there is evidence supporting both sides of the forgery defense.

Credibility Issues

In her moving papers, Silverstein claims Prencipe was her attorney, that he made a representation to her that the assignment to MCL was invalid, and that he sent her an executed assignment of the patent from himself to PIL. Precipe disputes these allegations, and claims Silverstein made misrepresentations exemplified by exhibits 7 and 8 to his declaration.

The court perceives credibility issues with both Silverstein and Princepe. As earlier noted, Prencipe provides no alternative explanation as to how the executed assignment was sent from his computer. There is also some evidence that Prencipe acted as an attorney in some capacity in December 2016, although it is not clear exactly who the client was at that time. (See Exh. 19 to suppl. Silverstein declaration).

In her reply papers, Silverstein asserts new facts that were omitted from her moving papers. Silverstein claims Exhibit 7 to the Prencipe declaration "accurately reflects [her] ownership of NFC Rings, Inc. as of June 2016." (Suppl Silverstein decl. ¶ 4) However, in Exhibit 6 Silverstein purports to be a 61% owner of McClear Limited, dba NFC Rings, not NFC Rings, Inc. As to Exhibit 8 to the Prencipe declaration, (application to New Bridge Merchant Capital) Silverstein's explanation is also

---

[3] Scates does not state he signed the November 1, 2016 agreement in his declaration. There is no declaration from Trehan regarding his signature.

unpersuasive. In that application, Silverstein represents that Maribel Ibarra is a 19% majority owner of McLear & Co. In her supplemental declaration Silverstein claims she hired Ibarra as an independent contractor for MCL and told her she could use the title "partner." That does not explain why Ibarra is listed as a ":19% - majority owner" on that application, especially in light of Silverstein's arguments that Prencipe and MCL are one and the same.

Finally, Silverstein purports to explain her submission to Citibank of an alleged financial report dated April 30, 2016 which represents that Silverstein is a director. Exhibit 12 is an email chain showing Silverstein seeking a line of credit for McLear & Co. Silverstein submits Exhibit 18 which she claims is a true and correct copy of an executed SAFE agreement and term sheet, which "explains that I am a member of the Board of Directors." Exh. 18 appears to be an agreement regarding future equity, that requires Silverstein's trust to invest $4 million dollars in exchange for equity in MCL. The agreement is contingent on payment of the investment prior to June 20, 2016. Silverstein does not declare whether in fact the money was ever paid. Further, the agreement is set up for signature by John McLear, managing director of McLear & Co. Silverstein has not adequately explained anywhere in her moving papers the relationship of John McLear, MCL, McLear Ltd. and Prencipe.

### Summary – Plaintiff's Likelihood of Prevailing

Although Plaintiff has shown some probability of prevailing on its contract claim, that showing is not particularly strong for the reasons stated above as to MCL's prior assignment and as to weaknesses in Plaintiff's estoppel arguments. Defendants' evidence of forgery, while disputed, also raises questions about Plaintiff's likelihood of prevailing on a contract claim.

### Balance of Hardships

For the second factor, "irreparable harm" means that the defendant's act constitutes an actual or threatened injury to the personal or property rights of the plaintiff that cannot be compensated by a damages award. (*Brownfield v. Daniel Freeman Marina Hospital* (1989) 208 Cal.App.3d 405, 410.)

As discussed above, Plaintiff submits evidence that it has developed business relationships with third parties seeking to commercialize rings based on the Patent. Plaintiff submits evidence that these business relationships have or will be disrupted by Defendants continued use of the Patent. (Silverstein Decl. ¶¶ 16-53.) Plaintiff also indicates that the November 1, 2016 agreement includes an "inadequacy of damages" clause. (Mot. 11; Exh. 6 at ¶ 3.11.) In opposition, Defendants submit evidence that

9

MCL owns the Patent and derives its income from the NFC Ring unit and its licensing agreements. (Prencipe Decl. ¶ 5.)

Plaintiff contends that it will suffer irreparable harm if an injunction is not granted because it is "losing the exclusivity for a novel technology that is just coming to market"; there are potential lost business opportunities and goodwill; and several specific business relationships have already been lost or are at risk of disruption based Defendants' interference. (Mot. 12-13.) Silverstein's detailed declaration generally supports the argument that Plaintiff may suffer irreparable harm to business relationships, which are primarily in early stages, if Defendants continue to assert rights to the Patent. On the other hand, Defendants submit evidence that MCL derives most of its income from the Patent and an injunction would therefore irreparably harm and disrupt its business as well. (Prencipe Decl. ¶¶ 2-6.) Given that Defendant is the registered owner of the patent, the balance of hardships tips in favor of Defendant.

As discussed, Plaintiff has shown some probability of prevailing on its contract claim. The court is not persuaded that the potential irreparable harm to Plaintiff, balanced against the harm to MCL, is sufficient to upset the status quo pending trial.[4]

## Conclusion

The application is DENIED.

---

[4] Based on this conclusion, the court need not reach Defendants' arguments that Plaintiff has unclean hands precluding equitable relief. (See Oppo. 14-15.)

## PROOF OF SERVICE

STATE OF CALIFORNIA)
COUNTY OF LOS ANGELES)

    I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 300 South Grand Avenue, 14th Floor, Los Angeles, CA 90071.

    On **March 31, 2017**, I served the foregoing document(s) described as: **[PROPOSED] ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action.

| | |
|---|---|
| Andrew D. Skale, Esq.<br>Ben L. Wagner, Esq.<br>Heather Silver, Esq.<br>**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC**<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA 92130<br>Tel: 858-314-1500<br>Fax: 858-314-1501<br>Email: askale@mintz.com;<br> bwagner@mintz.com;<br>hjsilver@mintz.com | *Attorneys for Plaintiff*<br>*ESOS RINGS, INC.* |

[X]   **BY OVERNIGHT COURIER** I caused each envelope with fees prepaid to be shipped by Federal Express.

[ ]   **BY ELECTRONIC MAIL** I transmitted the above listed document(s) to the e-mail address(es) set forth above on this date.

Executed on **March 31, 2017**, at Los Angeles, California.

[X]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

| | |
|---|---|
| Lynette W. Suksnguan | /s/ |
| *Print Name* | *Signature* |